May I please the Court, Julie Hsu with the Asian Pacific American Legal Center for Appellants and with me is Christina Chung and John McCoy. I'd like to reserve three minutes for rebuttal. We have some high school students here. Why don't you take just a couple seconds and tell us what this case is all about, so they'll have a sense of what's going on. Okay. What is this case all about? This case was originally filed in state court on behalf of 19 garment workers who sewed garments for a private label retailer called Forever 21. Some of you may actually be familiar with the label because they market mostly to young women. And the garment workers alleged that they worked in conditions that were substantial. They weren't paid overtime, where they were subject to unhealthy working conditions. And our allegation is that it's not only the direct employers of the workers who are responsible, but it's also the company who orders the garments, who demands the cheap labor, who has control to stop that kind of practice and doesn't do so. So, it's really a question of who is responsible for the proliferation of sweatshops in the garment industry. So, you filed cases originally in state court? Exactly. Exactly. And then what happened? You can address us now. Thank you. Okay. Well, this appeal is far less complicated than it seems. There are basically two issues. First, this court doesn't even need to reach the merits because it is clear that the district court should not have exercised jurisdiction over the exclusively state law claims remaining in the case. And second, if this court finds that the district court had jurisdiction, dismissal with prejudice on a 12b6 motion was improper. Let me ask you a couple of factual questions. I want to be sure I understand exactly what's at issue here. The company, Fashion 21, as I understand it, is a retailer of women's clothing. Is that correct? Forever 21 calls itself a retailer. Isn't it a retailer? It is a retailer to the extent that it sells garments to the public. Also, it's not a manufacturer in the traditional sense, is it? In other words, there's no indication that Fashion 21 has a factory at which it makes clothes. Is that correct? Well, it is correct that they do not have a factory. I understand your theory. Fashion 21, in turn, purchases the clothing manufacturers. Is that right? And the manufacturers, in turn, subcontract part of the work, the sewing of the garments, to sewing contractors. Not in every instance, but, yes, that's generally their practice. In some instances, it's more  And the clients are the people who did the sewing. Is that correct? Exactly. And as I understand, your theory is that Fashion 21 is the joint employer of these people who did the sewing and, therefore, is liable for whatever claims the sewers have against their immediate employer, the sewing contractor. That is one set of theories that we have under California law, the statute that explicitly extends liability beyond the direct employer. We also have other theories, of course, that their business practice was unfair and unlawful. Now, let me ask you one other question. Suppose this case went back to be tried. What evidence, if any, do you have showing that Fashion 21 was somehow involved in the purchase of the terms and conditions of employment of your clients in their work as sewing? In other words, did it set the wages in any way? Did it insist that wages be kept low? Do you have any evidence showing that? Let me answer that in two ways, Your Honor. The first is that we believe that we have made those allegations. And in the complaint, we allege that Forever 21 uses manufacturers and contractors who are chronic violators. You allege that in the complaint. My question to you is, since presumably under Rule 11 you've investigated this before you filed it, my question to you is, do you have any evidence showing that, in fact, Fashion 21 played a controlling or a significant impact in determining the working terms of your clients? Or is your theory that it must have known and should have known and, therefore, under state law, it's liable? We have both, Your Honor. And again, for purposes of this appeal, all the merits all this Court needs to find is that there is some set of facts under which plaintiffs can seek relief. And if those facts are not clear enough … What evidence do you have? What evidence do you have that you would be prepared to introduce to show that, in fact, Fashion 21 played a role, an active role, in determining the terms and conditions of employment of your clients? Forever 21 is a private label retailer. Under California law, a retailer … Do you have any evidence, such as, for example, that someone from Fashion 21 came, went to the people who were doing the sewing and said, look, we've got to keep the prices low. We don't want you to pay these people who are sewing more than $4 an hour. Do you have anything like that? Well, at this point in the case, when there's been no discovery conducted, we do not have that particular fact. But did you have any such evidence when you filed a complaint? Yes, absolutely. Forever 21. Our allegation is that Forever 21, as a private label retailer … They're not like Macy's or Nordstrom's, where those retail stores buy finished garments from other companies, bearing the labels of other companies, and then sell them in their stores to the public. Now, Forever 21 has garments that it sells exclusively in its own stores, that are made for sale in its own stores, that bear its own label. And the level of control over the production process in that case, we believe, gives rise to liability under state law. Now, the specifics of how they did that, what they demanded, how much quality control and other kinds of inspections they did at the factories to prove them at trial, we intend … Obviously, when we made the allegations, we expected to prove them through the course of discovery and through the course of developing the case. But you haven't yet developed the evidence to prove it. Absolutely. Now, getting back to the question of jurisdiction, though, this is a threshold issue. And the U.S. Supreme Court and this Court have repeatedly said that that requirement is inflexible and without exception. If the district court lacked jurisdiction, the case should have been dismissed without prejudice. Why did the district court lack jurisdiction? I can understand your arguing that the district court abused its discretion in not dismissing the case, but why do you say it lacked jurisdiction over these supplemental claims? My argument is that the district court abused its discretion. So it's not a question of lacking jurisdiction. That's correct, Your Honor. I mean, there are many cases in which courts have accepted supplemental claims after dismissing the Federal claims, and that's within that jurisdiction. The question is whether, considering all the facts, the district court should or should not have entertained these claims. Exactly, Your Honor. And I submit that under this Court's recent decision in Holly D. v. Caltech, it's clear that it is an abuse of discretion to hang on to State claims requiring multiple decisions on important, unsettled, and policy-laden issues of California law. That is clearly the case here. There's no — Do you know, are there any cases in this Court in which we have held it was an abuse of discretion to continue to hear supplemental claims? Yes, exactly. That's Holly D. v. Caltech, 339 F. 3rd, 1158. It's a recent case, and the operative facts are essentially the same here. The Federal claims were resolved, and the remaining issues were unsettled areas of California law. I think that the briefs before this Court make it abundantly clear that, at best, there's some State statutes here that are ambiguous. In Caltech, the district court held that it had exercised its jurisdiction over the supplemental claims. Exactly. And we reversed that. Exactly. Exactly. On the same grounds that we are — that we submit exist today, which is that there are very novel and complex areas of State law, not just one or two, but all of our claims rest on State law. And — Give me the pinpoint site in Judge Reinhart's opinion. Yes. It's 1187. 1187. Is there a page 1187 in that case? Yes. 339 F. 3rd, 1150. I don't think there's a page 1187. I show the case ends at 1182. I apologize, Your Honor. Let me — let me look at that. Okay. I'm looking at it. I'm just looking for the page site here. Well, it's one or the other. Is that right? Yes. It looks like the quote — yeah, I'm sorry. I — Were you quoting note 28? That's the wrong site. On page 1181. Exactly. It's on page 1181. I'm sorry. And to further reinforce the point that there are complex and unsettled areas of State law, there are no fewer than three California cases right now pending, the outcome of which could bear on this case. The first, Reynolds v. Bennett, upon which the defendants rely, is an unpub — is a depublished case on review before the California — California Supreme Court about a corporate officer's liability under the Labor Code. Fashion 21 v. Naro, involving these same defendants, is a case now before the California Court of Appeals. A central question there is whether retailers are included under Labor Code. That case will be heard before the California Court of Appeals next month. And there's currently a state trial court case involving a private label retailer like Forever 21. This one is called Wet Seal. These just point further to our submission that the district court really overreached in — in coming before the state courts in interpreting this brand-new state statute that has just been passed. Went into effect in — in 2000. And — Can you say that there's no California appellate decision directly in point on these issues? Absolutely. I believe — It's an open question as far as — as far as California law is concerned. That's right. And as further evidence of that, the state attorney general felt this case was important enough to submit an amicus curiae brief. And their interpretation of the law differs from that that the defendants have — have submitted. So we believe that the state court is the appropriate form in which to evaluate this. This district court decision was the very first that we know of under this new Labor Code provision. That's only one factor under 28 U.S.C. 1367C that the court needs to consider in determining whether it's an abuse of discretion to exercise supplemental jurisdiction. This case comes from Judge Reel? Correct, Your Honor. Was there any explanation at all by him as to why he was retaining these state law claims in federal court? There was not, Your Honor. In fact, what's clear from the record is that he took up the 12B6 motions, dismissed all the claims with prejudice on the merits, and then said that the question of jurisdiction, any remaining motions were moot. That's at the excerpts of record, page 859. Did you ask him to elaborate as to why he was keeping these? He's a very friendly judge, you know. At the time, Your Honor, I did not. Our case satisfies not only this first important provision of 28 U.S., but all of the remaining factors as well. The second question is, do the state law claims predominate? Well, here, they're the only remaining claims in the case. This is different from when the case was originally filed, where there were 18 defendants, the majority of whom against which we'd allege federal claims. All those defendants are gone, and the only claims now are state claims. Again, under novel theories and unsettled areas of state law. As Judge Friedman, you pointed out, there's no California Court of Appeals case that has dealt with this, and we expect that various ones will do so. There are pending cases as we speak. You like Holly D., because that came from Judge Reel, too. Well, I like it, because it confirms our proposition that 1367 C. He didn't explain anything in that case, either. That's correct, Your Honor. That's correct. The third factor is, has the district court dismissed all the claims on which original jurisdiction was premised? Yes. That's clear also from the fact that the docket reflects once Judge Reel dismissed the 12b-6 motions, or granted the 12b-6 motions and dismissed all the claims on the merits, he considered the case terminated. These were the only defendants left. Counsel, is there still a dispute between the parties regarding whether there's been settlement of all the remaining defendants? There is a dispute, Your Honor, and that's really a red herring. And the reason for that is that plaintiffs have dismissed Primula with prejudice, in compliance with both the letter and the spirit of Rule 41. The letter of Rule 41 says that a plaintiff can voluntarily dismiss a defendant prior to the filing of an answer or a motion for summary judgment. By that particular defendant? Exactly, by that particular defendant. And Rule 12 is categorical. It says that an answer shall be filed by defendants within a specified time. Primula never did that. Even after the parties stipulated to extending their time to answer, the district court said no. So the only time that Primula could have filed an answer is by leave of court. They never voluntarily dismissed them, which we did. The second point of the spirit of Rule 41 is that it exists to protect defendants from having invested in cases and then having plaintiffs dismiss them and then refile those same claims. We dismiss them with prejudice. There's no danger that these same claims will be brought up against Primula. Exactly what are you asking us to do now? What do you want us to do? We believe that the most appropriate disposition of this case, given all of the circumstances, is to find that the district court abused its discretion in exercising jurisdiction, instruct the district court to dismiss the claims without prejudice so that we can proceed in the proper form on these novel areas of state law. Wouldn't it be equally appropriate to remand the case to the district court and say, please explain why you kept these? I believe that that is a possible, that that would also be an appropriate outcome, although less ideal than the first, in part because it's simply so clear here, as it was in Holly D., that there is no way to maintain jurisdiction that wouldn't be an abuse of discretion. However, what we've always wanted was just a full and fair hearing on the 1367 factors. What we want to avoid, because we believe that in fairness to all the parties, the case should be heard in the appropriate form as soon as it can be, is it being remanded for that and then going through another round of appellate litigation. Trapped here for two years. Correct. Exactly, Your Honor. Just to find that our clients are going to proceed in state court a year and a half from now. What would you think of our saying to Judge Real, look, we're sending this case back to you to explain why you did this, but as an alternative to doing that, if you wish, you may reconsider your decision to entertain supplemental claims, and you may wish to dispose of this case on a remand by reversing yourself, in effect, and dismissing this. I believe that that would be one possible way to deal with the issue. Again, we'd like to avoid any further delay on this question, because we believe it's very clear. But that is one possible disposition of the case. You have four minutes left. Would you like to save that for rebuttal or keep going? Sure. I'll save it for rebuttal. Thank you, Your Honor. The podium belongs to the other side. Good morning, Your Honors. May it please the Court, Wayne Flick of Latham & Watkins, and my associate Brian Glennon from Latham & Watkins for the Fashion 21 defendants. On the jurisdictional point, I think we veered off track. It is clear to me that Judge Real had subject matter jurisdiction over this action on March 4, 2002, when he decided the motions to dismiss under 12b-6. There were federal claims asserted against defendants Primula and Co., and those claims had not properly been dismissed. Primula and Co. had filed an answer before the appellants filed their Rule 41 notice of dismissal. That Rule 41 notice of dismissal was, therefore, ineffective. The answer had been filed. Now, it is true that when the case was pending before Judge Mass, the parties stipulated to an extension of time for Primula and Co. to answer. Judge Mass did not permit. He did not sign off on that stipulation. And it is true, then, that the answer filed by Primula and Co. was late under the order by Judge Mass. This case was then transferred, as you know, to Judge Real. Nevertheless, there is nothing in Rule 41 that says, that qualifies the requirement that the appellants either get a stipulation from the party, by the parties, or an order from the court to dismiss the case once the answer is filed. But if the answer is filed in violation of the time limits, and no permission was granted to file a late answer, what effect does that answer have? I believe the late on the Rule 41 question, Your Honor. If the appellants believed that the answer should not have been filed, it was incumbent upon them to seek relief from Judge Real. On the other hand, Judge Real could have, on his own motion, stricken that answer. Neither of those things happened. There's nothing in Rule 41 itself, or in Rule 41 jurisprudence, that I can find that suggests that the late filing of an answer affects the rights of a party under Rule 41. So your argument is, then, since the Rule 41 voluntary dismissal was ineffective, then the Federal jurisdiction still lies? That is precisely my point. And therefore, it was appropriate, and not an abuse of discretion, for Judge Real to hear the motions under 12b-6, because the jurisdiction over the claims against Primula and Co. carried with it On that date? On that date. What subsequently happened to the Federal claims? That is somewhat a mystery, Your Honor. That's why I asked the question. And I understand the purpose for your question. I do not represent those defendants. I can't tell you what transpired after March 4th between Primula Co. and the appellants. It is my guess that the appellants, in service of the argument they would make here, decided not to prosecute their claims against Primula and Co. Primula and Co. did not settle. The record reflects, in fact, that after the appellants represented Judge Real Have those claims been dismissed, do we know? I don't know that they have been or not. What I do know is that they have not been prosecuted. I do know that they have not been prosecuted. And I believe the record reflects that the case was J6'd. I sense that if this thing goes back, all you're going to have is state law claims remaining. Is that right? Assuming that the appellants do not prosecute whatever claims they may have hanging out there against Primula and Co., that is the case. However, that being the case, and assuming there is then an analysis of whether or not it is appropriate for Judge Real to retain jurisdiction, let me address that. First of all, I differ with Ms. Sue about whether or not this case truly involves complex There's nothing either unsettled nor complex about the questions raised by their negligence claims, their negligence per se claims, or their claims under Business and Professions Code Section 17200. And I think there's nothing magical about their claims under the Labor Code. Do you agree, though, that there's been no state appellate decision that really addresses these claims? On the Labor Code claim, yes, that is correct. The garment manufacturing provisions of the Labor Code are sufficiently new, amended in 2000 by way of Assembly Bill 633, that there is no appellate decision on that. You clarified exactly, you made the point precisely that I was going to make, and that is the complaint is unambiguous about the relationships between these parties. Fashion 21 is a retailer. It purchases finished goods from manufacturers. Some of those manufacturers contract with sewing companies to perform certain sewing operations. And the complaint is unambiguous that the appellants were employed by the sewing companies. The question here is not one of fact. The question is one simply of law. What are the legal consequences under the plain text of the Labor Code of those relationships in order for Fashion 21? Isn't there some confusion regarding the definition of retailer for purposes of this litigation? The legislative history is sort of indicative that there was a question as to whether or not retailers should be included or excluded and the extent to which retailers should be held accountable. So doesn't that kind of undermine your argument that it's clear whether or not retailers can be liable? I think it does not, and here's why. I will grant you that I think that there's some confusion, although the confusion may have been created by the parties in this case. There's some confusion about the definition of garment manufacturing in Labor Code Section 2671B. However, and I think our briefs fairly exhaustively cover our positions on that, even if under the code it makes no difference because in order for Fashion 21 to be deemed the employer of the appellants in this case, two other things must occur. Under Section 2677A, the joint liability provision under which they sued, two other things are required. Number one, Fashion 21 must have contracted with an unregistered garment manufacturer, and number two, that unregistered garment manufacturer must have employed the plaintiffs. The California Attorney General doesn't agree with your interpretation, so what do we make of that? The fact that the California Attorney General has given us an amicus brief that directly contradicts your interpretation of the statute. With respect, Your Honor, I believe the Attorney General only disagrees with our argument on the first point, which is whether or not Fashion 21 is engaged in garment manufacturing to begin with. Well, apparently there seem to be a lot of difficult problems in interpreting this statute, and my question to you is why should this court do that? Why isn't that an appropriate matter for the state court initially? Because, Your Honor, the point I was making is I don't think that there is anything difficult whatsoever about applying the liability-creating provisions, which are the essential provisions at issue in these claims. Even if I grant the appellants their argument that Fashion 21 is engaged in garment manufacturing, still the complaint is unambiguous about the relationship to the parties, who contracted with whom, and who employed whom. Fashion 21 is two steps removed from the employers of these appellants. Section 2677A, the joint liability provision, is absolutely clear. Contractual privity is required in order for joint liability to attach. There is no contractual privity between Fashion 21 and the employers of the appellants who allegedly denied them overtime and minimum wage compensation. The argument that I think they're making is that Fashion 21 is the de facto employer of their clients. The argument they're making is that Fashion 21 is the joint employer under 2677A. And what I'm saying, Your Honor, is that 2677A is clear in its requirement of contractual privity. Before an employment relationship can lie. Before what? An employment relationship can lie. Absolutely. Now, what 2677A does accomplish is it makes the manufacturers who contracted with the sewing companies the joint employer of the appellants and jointly liable for any wages that they were denied. What the appellants are asking this Court to do is to rewrite 2677A and to eliminate the contractual privity requirement. That is not a complicated issue of state law. It is a basic matter of reading 2677A and applying it to the uncontested factual allegations in this complaint. But we don't have any idea, do we, whether that was the basis on which the district court dismissed the complaint for failing to state a claim on which relief could be granted. The district court doesn't say bull about that. All it said is goodbye. Well, two points, Your Honor. Number one, this Court's review is de novo, and it may affirm on any ground. And number two, as I believe, Judge Trott, you have said in a previous decision, a district court judge does not need to explain his decision to dismiss a case with prejudice if it is apparent on the record. And what I'm suggesting to you is it is apparent on the record because this complaint is unambiguous. I'm sorry. Was that case you're citing a 12B6 case? Yes. What case is that? I don't have the site in my head, Your Honor. Do you have the name? I don't have the name in my head, Your Honor. Actually, I take that back. It appears to me that the judge may have dismissed the case because he got mad at Ms. Sue for leaving out words when she was reading his statute. I think that's... You left out the words when you read it. Both. Judge Rollinson. Roth v. Garcia, 2-2, Fed Second, 6-17, 1991. Number 942F... Fed Second, 6-17. Was that in your brief? No, it is not, Your Honor. 6-7 is what? 6-17. 6-1-7. And what is the name of it? Roth v. Garcia-Marquez. Roth? Roth, R-O-T-H, v. Garcia-Marquez. And, Judge Trott, well, I don't disagree with you about the colloquy that occurred between Judge Real and Ms. Sue at oral argument. I don't think that's the reason this case was dismissed. Why was it dismissed? Why do you think it was dismissed? Because I think as a matter of law... As a matter of law. As a matter of law, given the uncontroverted relationships between these parties that is set forth in this very well-crafted 65-page complaint, Fashion 21 cannot be liable for the unpaid wages of these appellants. That's why I think this case was dismissed. And that doesn't have anything to do with what you agree is some confusion in state laws to what these statutes mean? That's correct. The only confusion, if there is any, is about the definition of garment manufacturing. And that question is simply whether or not Fashion 21 is engaged in garment manufacturing to begin with. Because the predicate for liability, the first predicate for liability under 2677A, the joint employer provision, is Fashion 21 must first be engaged in garment manufacturing to begin with. If it is not, the statute doesn't apply. So we first have this argument about whether or not Fashion 21 is engaged in the business of garment manufacturing, as that term is defined in 2671B. We say Fashion 21 is not. Their reading of the definition of garment manufacturing is distorted. And while the now former labor commissioner agrees with them, at least one California court has said that the labor commissioner's interpretation is clearly erroneous and is not entitled to any weight. He, like the definition of garment manufacturing, it is a definition of a function. They are suggesting any persons contracting to have those operations performed brings Fashion 21 within the definition because they contract to have operations performed. Does the California attorney general agree with your interpretation of garment manufacturer or with the appellant's interpretation? The California attorney general's interpretation, the California attorney general is advancing the labor commissioner's interpretation. Which is not ours. Which is not ours. But as I said, Judge Rawlinson, for the purposes of this case, it doesn't make any difference because I'm willing, for the purposes of this argument, to grant that Fashion 21 falls within that definition. There's still two other requirements for liability to attach, and the complaint is clear that those elements are not satisfied in this case. And they are? First, Fashion 21 must contract with an unregistered garment manufacturer, which is not alleged. And number two, even if it did contract with an unregistered garment manufacturer, the appellants seeking relief must be the employees of that unregistered garment manufacturer. That is the contractual privity requirement. Here... What language in 2677 are you relying upon to say that they have to be in contractual privity? 2677A. Any person engaged in the business of garment manufacturing who contracts with any other person similarly engaged who has not registered with the commissioner, et cetera, shall be deemed an employer and shall be jointly liable with such other person for any violation of 2675 and the sections enumerated in that section. In other words, Fashion 21, if it contracted with an unregistered garment manufacturer, would be deemed the employer of the employees of that unregistered garment manufacturer and would be jointly liable with that unregistered... Should say that direct... Let's say it doesn't necessarily require directly contracting. It may also include subsidiary contracting. I don't know what the California courts would say on these issues. That's the problem I have. You tell us that it's clear beyond peradventure that under California law there's no way in which Fashion 21 could be deemed to be the joint employer of these people. And I... Maybe you're right, but I don't know. How do I know what California courts are going to do when they deal with this statute? These statutes obviously represent some sort of a compromise between the conflicting interests. And, Mike, I still come back to the question, isn't that something that the California courts should decide in the first instance? You say that there's no way in which the California courts can possibly decide in favor of Fashion 21's position. Maybe you're right, maybe not. I don't know. Well, Judge Friedman, I've long given up saying that the California courts can't decide one thing one way or another. But, nevertheless, this would not be the first case in which this court had interpreted a statute which was uninterpreted by a California court. And it is my position that 2677A is clear in its requirement of both that Fashion 21 contract with an unregistered garment manufacturer and contractual privity. Neither of those things is alleged. And, in fact, the contrary is alleged. Well, the California Attorney General starts right out, and I like to read the arguments, says the California Labor Code establishes that a person who contracts with another person for cutting, sewing, or otherwise making garments for sale or resale may be jointly liable for the wages of the garment workers employed by the second person. Yes, I believe that supports my point, Your Honor. That is the second person. Here we have the appellate working there is actually about the definition, which I've set aside for a moment. But, nevertheless, I believe his brief supports my argument that the first person who contracts with an unregistered second person may be jointly liable for wage and hour violations committed by the second person and may be liable to the second person's employees. That is not this case. It is clear that the manufacturer defendants in this case would have been liable under 2677A, assuming that the plaintiffs proved all of their factual allegations. They would have been jointly liable for the wage and hour violations of the unregistered sewing facilities with which they contracted. What they are asking you to do is to extend liability to retailers. I read the California Attorney General saying your view of 2677 is wrong, and we don't take any position at all on the factual issues of whether they can prove their case. With respect, Judge Kraut, I believe the Attorney General is saying that our position on the definitional question is wrong. Right. The definitional question, whether or not we're engaged in garment manufacturing to begin with, which is only one of the three elements of the statute. And what I've said is, even if the Attorney General and Ms. Sue are correct, even if Fashion 21 is engaged in garment manufacturing, which is the opening language of 2677A, it would make no difference for the purposes of the unregistered garment people and the employees of the unregistered garment. Yes. Anything else, counsel? No, I think that's all, Your Honor. If the Court has no more questions. Thank you very much. Thank you. If I may just take up both issues here. Let me first answer some of the questions that this Court had about the proceedings below and then address the merits. What happened to the federal claims in the case below is that they were dismissed. The district dismissed. In fact, defendants moved ex parte to set aside the notice of dismissal of Primula with prejudice, and the district court denied it. Plaintiffs obviously believe that Primula has been dismissed. It would defy logic for Primula itself to be fighting its way to get back into a case from which it's been dismissed with prejudice. So all we have here is we're talking about Primula because these defendants are seeking a very thin thread on which to hang federal jurisdiction, and we believe that this undermines the purpose of 28 U.S.C. Section 1367 and the purpose of state court evaluation of state policy, state common law, and state statutes. So to what would we point to say definitively that the federal claims and everybody else were out of this case? At excerpt of record 653, that's the notice of dismissal of Primula with prejudice. Okay. The district court refusing to grant defendants ex parte to set aside that notice of dismissal, that's excerpt of record 785 to 792. And the docket number 89 showing that the case was terminated is at excerpt of record page 883. Thank you. Thank you, Your Honor. And let me just take up the merits for a moment. The standard for 12b-6 is whether there's any set of facts that can be alleged on which plaintiffs could recover. So I'm just going to make four general points instead of getting into each of the specific statutes unless Your Honors have questions. The first point is that even if we accept their reading of all the state laws as correct, in contradiction of the state's highest law enforcement officer, this case is still rife with factual disputes. And this question of whether they were two steps removed, as I responded to you earlier, Judge Friedman, on a question, it's we've learned since the case what a contractual relationship. I'm not trying to prove that here. I'm just saying that there are numerous factual disputes in this case. At the very least, if the district court believed that we had not met the Rule 8A requirements of notice pleading, we should have been given leave to amend. My second point is that the defendants are asking you to affirm a dismissal with prejudice under state law that the state attorney general has said is the wrong interpretation of state law. If I heard the other side correctly, the state attorney general is dealing with point one, whether the definition was properly understood by the district court. The other side says, yes, but there are three elements of this. You have to be dealing with an unregistered garment maker, and the people involved have to be the employees of the unregistered garment maker. And they say you found her on points one and two. So even if you're right on one, you don't get anywhere under 12b-6. Your answer to that is? The answer, Your Honor, is that not only have no California courts evaluated retail liability under Section 2677, the attorney general had no opportunity to do so because this argument was never raised before the district court. It was not raised until the Ninth Circuit briefs, and therefore, it should be deemed waived. But the response. Well, but what if we go and we look at that to see whether the other side is right? Is that right? It's wrong. You have trouble on points two and three, as they call them? No, I would say at best those are ambiguous. Ambiguous. Because 2671 and 2677 were amended at the same time of the California Labor Code. They were amended in order to extend liability beyond the direct employer to manufacturers, which includes retailers who behave like manufacturers. So. In some circumstances. Exactly. Given the right facts. And the standard here is. What are the facts? You say given the. What are the circumstances under which a retailer, in your view, may be liable for violations of the Labor Code? That there's some evidence that they directly interfered with the. They told the manufacturers how to subcontract. Does it have to be that kind of detail? Or is it just a general notion that they must have known that at the prices they were willing to pay, the contracting parties couldn't meet the labor standards? To be honest, Your Honor, I don't have a definitive answer to that. Again, because it hasn't been evaluated by the State courts. But I will say that the Labor Code, who was charged, the Labor Commissioner, who was charged explicitly with defining, better defining 2671 without limiting it, has in administrative claims found a private label retailer liable. And that's the state trial court case that's still open, the private label retailer Westfield. So what specific facts we need and what specific facts we will find through discovery, it's extremely premature at this point to say what they are. But the statute doesn't explicitly require any of that. It doesn't explicitly require knowledge. It basically extends liability to the party who the legislature believes had some ability to stop the violations, if the legislature's attempt to respond to the substandard labor conditions in the industry. And let me just also say that Mr. Flick suggested that the areas of state law are very well settled, but California Business and Professions Code 7200 is a unique creature of state law. There's no parallel in Federal law. And the California Court of Appeals itself has said that the question of unfairness under 7200 is a question of fact. It's clear that the district court misapplied the statute here. As the authorities cited in our opening, it's clear the district court was simply wrong in concluding that that statute is limited to anti-competitive claims. And that or that the plaintiffs didn't have standing in this case. Standing is conferred explicitly by the statute. Their standing in applying this unique state statute further points to propriety of state court adjudication of this matter. And the district court dismissed a claim on which the defendants themselves didn't even move, on which the defendants themselves conceded there was at least a factual dispute. This issue was never briefed. And, again, at the very least, on the merits, if jurisdiction was appropriate at all, the plaintiff should have been given leave to amend. Is your point also that Section 2677A that talks about engaged in the business of garment manufacturing, who contracts with any other person similarly engaged who is not registered with the commissioner, is not an exclusive way that liability can attach? There are other ways, too. Absolutely. That is absolutely correct. That is absolutely correct. And that's where you get into the construction of these statutes. Exactly. Do you have anything else? I do not, Your Honor. Thank you both. Case well briefed, well argued. We appreciate it. Thank you very much. And we'll order it submitted, and we'll get you a decision as soon as we can figure it out. Thank you. The last case on our calendar for oral argument today, Brody v. United States District Court having been removed, is Clements v. Alameda. And we'll wait for a second while the high school students stretch their legs. Wow. That's good luck. That was tough, right? Yeah. At least we were able to let him know that he got his clothes on.  Mm-hmm. You guys did a nice job on that. Thank you. I think it's a pretty good idea. I mean, it's so unlike what they see on television. And now they're going to go talk about all of this with Judge Goodman, I think. Oh, good. They've got a judge lined up to talk to him about it. And he's going to explain the question. The high school students don't know this, but are waiting for them as a quiz on supplemental jurisdiction when they get back to school. All right.
judges: Friedman, Trott, Rawlinson